PER CURIAM.
 

 The Florida Courts Technology Commission (FCTC or Commission) has filed a petition asking the Court to adopt a new Rule of Judicial Administration that establishes the FCTC as a standing Supreme Court commission.
 
 [1]
 
 We have jurisdiction
 
 [2]
 
 and adopt the new rule.
 

 After the FCTC filed its petition, we published the proposed new rule for comment. The Florida Association of Court Clerks and Comptrollers (FACC) filed a comment, to which the FCTC filed a response. After considering the petition, the FACC’s comment, and the FCTC’s response, we adopt new Rule of Judicial Administration 2.236, Florida Courts Technology Commission, with modifications discussed below.
 

 New Rule 2.236
 

 New rule 2.236 formally establishes the FCTC as a standing Court commission with clearly defined responsibilities and authority. It places the FCTC on a status equal to that of other standing judicial branch commissions established by rule.
 
 [3]
 
 More importantly, unlike the current practice of establishing and charging the FCTC by successive administrative order issued every two years by the incoming
 
 *129
 
 chief justice,
 
 [4]
 
 establishing the FCTC by rule will stabilize the Commission’s responsibilities, authority, and stature in the judicial branch.
 

 As the court system moves from a system that depends on paper records to a system that relies on digital information and the use of technology in our courts expands, it is imperative that there is a permanent judicial branch commission to oversee and monitor the development, implementation, and use of technology in the trial and appellate courts, and to assist in the enforcement of the technology standards and requirements adopted by this Court. The judicial branch long-range strategic plan recognizes the value of information technology to improve court access and operations,
 
 [5]
 
 and this Court has recognized issues that accompany the transition to a system that relies on digital information.
 
 [6]
 
 The State’s recent revenue shortfalls highlight the need for carefully developed technology policies and priorities for the judicial branch and for a mechanism to implement and enforce those policies and priorities. Moreover, in the advent of electronic filing of court documents and implementation of a statewide electronic filing portal, the need for a standing Court commission equipped to provide consistent oversight and direction cannot be overstated.
 
 See In re Electronic Access to the Courts (Statewide Standards),
 
 Fla. Admin. Order No. AOSC09-30 (July 1, 2009);
 
 In re Electronic Filing Committee,
 
 Fla. Admin. Order No. AOSC09-50 (Nov. 25, 2009).
 

 FCTC Responsibilities and Authority
 

 New rule 2.236 charges the FCTC with broad responsibility for overseeing, managing, and directing the development and use of technology within the judicial branch under the direction of the Court.
 
 [7]
 
 Subdivision (b) sets forth these responsibilities. The rule ensures that the FCTC will develop all technology policies and standards for the trial and appellate courts and will review all applications for new court technology systems and modifications to existing systems to ensure compliance with standards adopted by the Court. The rule also gives the Commission authority to enforce the technology policies, standards, and requirements adopted by the Court, by requiring the termination or modification of, or by imposing conditions on, a program or system application that is not in compliance.
 

 Under subdivision (b)(4), the Commission will direct and establish priorities for
 
 *130
 
 the work of all judicial branch technology committees. We have modified the subdivision to make clear that the Commission must review and approve recommendations made by any court committee that concerns judicial branch technology matters or otherwise implicates court technology policy.
 

 We also have added a new subdivision (g) to the rule to formally establish the Appellate Court Technology Committee (ACTC or Committee) as a standing committee of the FCTC
 
 [8]
 
 and to formally recognize the responsibilities of that vital committee. The new subdivision clarifies that ACTC recommendations that implicate court technology policy must be reviewed and approved by the Commission, and the Commission will report those recommendations and the action it takes on them to the Court. Significantly, the subdivision provides a vehicle for the Committee to support or oppose FCTC action on its recommendations.
 

 Operational Procedures, Reports, and Court Action
 

 Subdivision (e) of the rule requires the FCTC to establish operational procedures necessary to carry out its responsibilities, subject to final approval by the Court. For example, subdivision (c)(2) requires the Commission to establish a method for monitoring the development of new court technology projects. This would include such projects as the ongoing Manatee County pilot program for providing electronic access to court records.
 

 We have modified subdivision (c)(7) and added subdivision (c)(8) to clarify that the Commission can establish both work-groups to assist with projects of limited duration and more formal subcommittees to work on long-term projects that will require substantial effort. The work of the existing Electronic Filing Committee, which also is currently created by administrative order,
 
 [9]
 
 is an example of a long-term technology project that would justify the appointment of a more formal subcommittee. Therefore, consistent with new subdivision (c)(8), we direct the FCTC to establish the Electronic Filing Committee as a formal subcommittee of the Commission. As directed by separate administrative order,
 
 [10]
 
 the Commission established the Subcommittee on Access to Court Records (Access Subcommittee) for the limited purpose of advancing rule amendments implementing recommendations of the Committee on Privacy and Court Records.
 
 [11]
 
 The Access Subcommittee’s charge is an example of the type of limited, short-term work that, under new subdivision (c)(7), would be conducted by a workgroup of the Commission. Accordingly, we direct the Commission to continue the Access Subcommittee as a workgroup of the Commission until its work is complete.
 

 
 *131
 
 Under subdivision (f), the FCTC is required to annually report its recommendations to the Court. We have added the requirement that the report include ACTC recommendations that implicate court technology policy. As noted above, the ACTC "will have the ability to submit a companion report on those recommendations. Subdivision (d), as modified, makes clear that the Chief Justice and the Court have wide latitude to adopt or reject, in whole or in part, refer back, or take alternative action on the FCTC recommendations or decisions.
 

 Membership
 

 Subdivision (e) of the rule outlines the membership and organization of the Commission. The membership of the Commission is expanded from the current 17 members to 25 members, which will be appointed by the Chief Justice after consultation with the Court. The membership will include both institutional users of court technology, such as judges, court administrators, court technology officers, and trial and appellate clerks of court, as well as non-court personnel, including members of The Florida Bar and members of the public at large.
 
 [12]
 
 All members must represent the interests of the public and state courts generally rather than the separate interests of any particular district, circuit, county, division, or other organization. However, we have modified subdivision (e)(2) to add an additional clerk of court to the membership, for a total of four clerks of court. Allowing for the appointment of an additional trial court clerk should ensure that small, medium, and large counties will be represented on the Commission.
 

 In adopting the new rule, we considered the comment filed by the FACC. The FACC’s stated concern is with the composition of a permanent body that would be created by the Legislature to oversee and monitor the development, management, and implementation of the integrated computer system referred to in section 29.008(l)(f)(2), Florida Statutes (2009).
 
 See
 
 Technology Review Workgroup,
 
 Plan for Identifying and Recommending Options for Implementing the Integrated Computer System for the State Court System
 
 (2010). The FACC urges that the composition of such a governance body must ensure that all justice system partners, including state attorneys, public defenders, and guardians ad litem, as well as courts and clerks of court, have a role in the governance structure. We appreciate the FACC’s concern that all justice system partners have a forum to address technology issues that may impact them. But the focus of the Court’s concern here and the present need in the judicial branch is for a permanent body to assist with the governance and oversight of technology relating to case processing and case and records management, including access to court records. The FCTC’s responsibility, under the new rule, will be to advise the Court on technology issues impacting the judicial branch and to oversee the development and use of technology in our trial and appellate courts. To that end, the FCTC’s membership appropriately includes district, circuit, and county court judges, clerks of court, court administrators, and court technology officers, as well as Florida Bar members and members of the public.
 

 
 *132
 
 The FCTC’s focus will continue to be on the development of technology in our courts. However, to the extent participation and input from other justice system partners is warranted, the new rule provides for that participation and input. For example, subdivision (b)(14)(C) of the new rule specifically requires the Commission to address technology issues raised by the courts’ justice system partners. Subdivision (c)(1) requires the FCTC to establish a method for ensuring input on judicial branch technology issues from all interested constituencies in the state. And under subdivisions (c)(7) and (c)(8), the Commission must establish procedures for appointing workgroups and subcommittees that may include non-commission members when non-member participation is warranted. Therefore, justice system partners not represented on the Commission will have a vehicle to bring technology issues that may impact them to the Commission and the Commission will have established procedures for seeking valuable input and active participation in the development of court technology.
 

 Accordingly, we adopt new Rule of Judicial Administration 2.236 as reflected in the appendix to this opinion. The new rule shall become effective immediately upon the release of this opinion.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 APPENDIX
 

 RULE 2.236. FLORIDA COURTS TECHNOLOGY COMMISSION
 

 (a) Purpose. The purpose of this rule is to establish a Florida Courts Technology Commission with responsibility for overseeing, managing, and directing the development and use of technology within the judicial branch under the direction of the supreme court as specified in this rule. For the purpose of this rule, the term “judicial branch” does not include The Florida Bar, the Florida Board of Bar Examiners, or the Judicial Qualifications Commission.
 

 (b) Responsibilities. The Florida Courts Technology Commission is charged with specific responsibility to:
 

 (1) make recommendations to the supreme court on all matters of technology policy impacting the judicial branch to allow the supreme court to establish technology policy in the branch;
 

 (2) make recommendations to the supreme court regarding policies for public access to electronic court records;
 

 (3) make recommendations to the supreme court about the relative priorities of various technology projects within the judicial branch so that the supreme court can establish priorities. The commission should coordinate with the Trial Court Budget Commission and District Court of Appeal Budget Commission to secure funds for allocation of those priorities;
 

 (4) direct and establish priorities for the work of all technology committees in the judicial branch, including the Appellate Court Technology Committee, and review and approve recommendations made by any court committee concerning technology matters or otherwise implicating court technology policy.
 

 (5) establish, periodically review, and update technical standards for technology used and to be used in the judicial branch to receive, manage, maintain, use, secure, and distribute court records by electronic means, consistent with the technology policies established by the supreme court. These standards shall be coordinated with the strategic plans of the judicial branch,
 
 *133
 
 rules of procedure, applicable law, and directions from the supreme court, and shall incorporate input from the public, clerks of court, supreme court committees and commissions, and other groups involved in the application of current technology to the .judicial branch;
 

 (6) create procedures whereby courts and clerks and other applicable entities can apply for approval of new systems, or modifications to existing systems, that involve the application of technology to the receipt, management, maintenance, use, securing, and distribution of court records within the judicial branch, and between the public and the judicial branch;
 

 (7) evaluate all such applications to determine whether they comply with the technology policies established by the supreme court and the procedures and standards created pursuant to this rule, and approve those applications deemed to be effective and found to be in compliance;
 

 (8) develop and maintain security policies that must be utilized to ensure the integrity and availability of court technology systems and related data;
 

 (9) ensure principles of accessibility are met for all court technology projects, with consideration and application of the requirements of the Americans with Disabilities Act of 1990 and any other applicable state or federal disability laws;
 

 (10) ensure that the technology utilized in the judicial branch is capable of required integration;
 

 (11) periodically review and evaluate all approved technology in the judicial branch to determine its adherence to current supreme court technology policies and standards;
 

 (12) review annual and periodic reports on the status of court technology systems and proposals for technology improvements and innovation throughout the judicial branch;
 

 (13) recommend statutory and rule changes or additions relating to court technology and the receipt, maintenance, management, use, securing, and distribution of court records by electronic means;
 

 (14) identify technology issues that require attention in the judicial branch upon:
 

 (A) referral from the chief justice;
 

 (B) referral from the supreme court; or
 

 (C) identification by the Florida Courts Technology Commission on its own initiative based on recommendations of the public, commission members, judges, justice system partners, The Florida Bar, clerks of court, the Florida Legislature (either informally or through the passage of legislation), the Governor, the cabinet, or executive branch agencies; and
 

 (15) coordinate proposed amendments to rules of court procedure and judicial administration necessary to effectuate the commission’s charge with appropriate Florida Bar rules committees.
 

 If a program, system, or application is found not to comply with the policies established by the supreme court or the standards and procedures established by the commission, the commission may require that it be terminated or modified or subject to such conditions as the commission deems appropriate.
 

 (c) Operational Procedures. The Florida Courts Technology Commission shall establish operating procedures necessary to carry out its responsibilities as outlined in subdivision (b), subject to final approval by the supreme court. These procedures shall include:
 

 
 *134
 
 (1) a method for ensuring input from all interested constituencies in the state of Florida;
 

 (2) a method for monitoring the development of new court technology projects, reviewing reports on new technology projects, and reviewing the annual reports;
 

 (3) a method whereby courts and clerks and other applicable entities can apply for approval of new technology systems or applications, or modifications to existing systems or applications, that affect the receipt, management, maintenance, use, securing, and distribution of court records;
 

 (4) a system to evaluate all applications for new or modified technology systems to determine whether they comply with the policies and technical standards established by the supreme court and the procedures created pursuant to this rule, and are otherwise appropriate to implement in the judicial branch;
 

 (5) a process for making decisions on all applications for new or modified technology systems and communicating those decisions to interested parties. If an application is found to comply with technology policies and standards, the commission may approve the application and its written approval shall authorize the applicant to proceed. For all applications that are not approved, the commission shall assist the applicant in remedying any deficiencies that the commission identifies;
 

 (6) a method to monitor all technology programs, systems, and applications used in the judicial branch to ensure that such programs, systems, and applications are operating in accordance with the technology policies established by the supreme court and technical standards established by the commission. The commission may ask any operator of a program, system, or application to appear before it for examination into whether the program, system, or application complies with technology policies and standards;
 

 (7) a process to conduct the limited, short-term work of the commission through work groups that it may constitute from time to time. Work groups may make recommendations to the commission as a whole. The chair of the commission may appoint non-commission members to serve on any work group; and
 

 (8) a process to conduct substantial work of the commission requiring long-term commitment through subcommittees. Subcommittees may make recommendations to the commission as a whole. The chair of the commission may appoint non-commission members to serve on any subcommittee.
 

 (d) Action by Supreme Court or Chief Justice on Recommendations of or Decisions by Florida Courts Technology Commission. The supreme court or chief .justice, as appropriate, may take any of the following actions on recommendations or decisions made by the Florida Courts Technology Commission:
 

 (1) Adopt the recommendation or decision of the commission in whole or in part, with or without conditions.
 

 (2) Refer specific issues or questions back to the commission for further study or alternative recommendations.
 

 (3) Reject the recommendation or decision in whole or in part.
 

 (4) Take alternative action.
 

 (e) Membership and Organization.
 

 (1) The Florida Courts Technology Commission shall be composed of 25 voting members appointed by the chief justice after consultation with the court. All members shall represent the interests of the public and of Florida courts generally rather than the separate interests of any
 
 *135
 
 particular district, circuit, county, division, or other organization. The membership shall include members who have experience in different divisions of courts, in court operations, and in using technology in court for case processing, management, and administrative purposes, and shall provide geographic, racial, ethnic, gender, and other diversity.
 

 (2) The membership shall include 2 district court judges, 5 circuit court .judges (1 of whom must be a chief judge), 2 county court .judges, 3 court administrators, 3 court technology officers, 4 clerks of court (1 of whom must be a clerk of an appellate court), 4 members of The Florida Bar (1 of whom must be a member of the Board of Governors of The Florida Bar), and 2 members of the public at large.
 

 (3) The members of the commission who are .judicial officers, court technology officers, and court administrators must constitute a majority of the commission and must constitute a majority of any quorum at all meetings of the commission.
 

 (4) A supreme court justice shall be appointed by the chief justice to serve as supreme court liaison to the commission.
 

 (5) Each member will be initially appointed for a 1-, 2-, or 3-year term, with the terms staggered to ensure continuity and experience on the commission and for three year terms thereafter. Retention and reappointment of each member will be at the discretion of the chief justice.
 

 (6) The chief .justice shall appoint 1 member to serve as chair for a two-year term.
 

 (f) Schedule of Reports. The Florida Courts Technology Commission shall prepare an annual report of its activities, which shall include its recommendations for changes or additions to the technology policies or standards of Florida courts, its recommendations for setting or changing priorities among the programs within the responsibility of the commission to assist with budget resources available, its recommendations for changes to rules, statutes, or regulations that affect technology in Florida courts and the work of the commission. The report also shall include recommendations of the Appellate Court Technology Committee that implicate court technology policy and the action taken on those recommendations by the commission. This report shall be submitted to the supreme court on April 1 of each year.
 

 (g) Appellate Court Technology Committee.
 

 (1) Purpose. The purpose of this subdivision is to establish the Appellate Court Technology Committee as a standing committee of the Florida Courts Technology Commission responsible for providing technical guidance and consultation to the commission regarding information systems development and operational policies and procedures relating to automation in the district courts of appeal.
 

 (2) Responsibilities. The Appellate Court Technology Committee is charged with specific responsibility to:
 

 (A) coordinate with and provide advice to the Florida Courts Technology Commission regarding the development of standards and policies for implementing new technologies, system security, public access to district court information, and system support;
 

 (B) develop, recommend, and implement policy and procedures consistent with the overall policy of the supreme court relating to technology issues affecting the district courts of appeal;
 

 (C) recommend and coordinate the purchase and upgrade of hardware and software in relation to the district courts’ office automation systems and networks;
 

 
 *136
 
 (D) oversee and direct expenditures of designated state court system trust funds for technology needs in the district courts;
 

 (E) promote orientation and education programs on technology and its effective utilization in the district court environment;
 

 (F) ensure principles of accessibility are met for all court technology projects, with consideration and application of the requirements of the Americans with Disabilities Act of 1990 and any other applicable state or federal disability laws;
 

 (G) propose amendments to rules of court procedure and .judicial administration necessary to effectuate the committee’s charge, after coordination with appropriate Florida Bar rules committees; and
 

 (H) identify budget issues and funding sources and coordinate with the District Court of Appeal Budget Commission on recommendations requiring additional funding or resources for implementation in the district courts of appeal.
 

 (3) Membership and Terms.
 

 (A) The chief justice will select the chair of the committee from among the judges of the district courts, with input from the chief judges.
 

 (B) The chief judges of the remaining district courts will designate a representative from each of their courts to serve as member of the committee.
 

 (C) The chair and members will serve 3-year terms. Retention and reappointment of the chair will be at the discretion of the chief justice. Retention and reappointment of the representative from each district court will be at the discretion of the district court chief judge.
 

 (4) Commission Approval and Reporting of Policy Recommendations. Committee recommendations that implicate court technology policy must be reviewed and approved by the commission. The commission will report the committee’s policy recommendations and the action taken on them by the commission to the supreme court. The committee may submit to the court a companion report on its recommendations, supporting or opposing the action taken by the commission.
 

 (h) Staff Support and Funding. The Office of the State Courts Administrator shall provide primary staff support to the Florida Courts Technology Commission and the Appellate Court Technology Committee. Adequate staffing and resources shall be made available by the Office of the State Courts Administrator to ensure that the commission and committee are able to fulfill their responsibilities under this rule.
 

 [1]
 

 . Prior to filing the proposal with Court, the Commission submitted its proposal to the Rules of Judicial Administration Committee, which supports the new rule in concept.
 

 [2]
 

 .
 
 See
 
 art. V, § 2(a), Fla. Const; Fla. R. Jud. Admin. 2.140(g).
 

 [3]
 

 .See, e.g.,
 
 Fla. R. Jud. Admin. 2.230 (Trial Court Budget Commission); Fla. R. Jud. Admin. 2.235 (District Court of Appeal Budget Commission).
 

 [4]
 

 .
 
 See, e.g,, In re Florida Courts Technology Commission,
 
 Fla. Admin. Order No. AOSC09-23 (June 1, 2009);
 
 In re Florida Courts Technology Commission,
 
 Fla. Admin. Order No. AOSC07-59 (Nov. 19, 2007);
 
 In re Florida Courts Technology Commission,
 
 Fla. Admin. Order No. AOSC05-92 (Dec. 30, 2005);
 
 In re Florida Courts Technology Commission,
 
 Fla. Admin. Order No. ÁOSC03-35 (Aug. 26, 2003);
 
 In re Florida Courts Technology Commission,
 
 Fla. Admin. Order No. AOSCOl-29 (June 18, 2001).
 

 [5]
 

 .
 
 See
 
 Florida Supreme Court Task Force on Judicial Branch Planning,
 
 The Long-Range Strategic Plan for the Florida Judicial Branch (2009-2015)
 
 at 10 (2009).
 

 [6]
 

 .
 
 See, e.g., In re Amendments to Fla. Rule of Judicial Admin. 2.420 & Fla. Rules of Appellate Procedure,
 
 31 So.3d 756 (Fla.2010) (recognizing that enacting a procedure for protecting confidential records is a necessary prerequisite to the Court's ongoing effort to provide the public with electronic access to court records);
 
 In re Implementation of Report and Recommendations of the Committee on Privacy and Court Records,
 
 Fla. Admin. Order No. AOSC06-20 (June 30, 2006).
 

 [7]
 

 .Due to budget cuts sustained over the past few years, fewer staff are available to support the work of the FCTC under this rule, which may result in limitations on the ability of the Commission to carry out its responsibilities, unless additional resources can be obtained from the Legislature.
 

 [8]
 

 . Like the FCTC, the ACTC currently is established by administrative order issued by the Chief Justice.
 
 See In re Appellate Court Technology Committee,
 
 Fla. Admin. Order No. AOSC08-82 (Sept. 23, 2008).
 

 [9]
 

 .
 
 See In re Electronic Filing Committee,
 
 Fla. Admin. Order No. AOSC09-50 (Nov. 25, 2009).
 

 [10]
 

 .
 
 See In re Florida Courts Technology Commission, Subcommittee on Access to Court Records,
 
 Fla. Admin. Order No. AOSC09-03 (Jan. 27, 2009).
 

 [11]
 

 .See In re Amendments to Fla. Rule of Judicial Admin. 2.420 & Fla. Rules of Appellate Procedure,
 
 31 So.3d 756 (adopting procedures designed to protect confidential information in court records);
 
 In re Implementation of Comm, on Privacy & Court Records Recommendations,
 
 No. SC08-2443 (Fla. petition filed Dec. 22, 2008) (proposing rule amendments to minimize the inclusion of unnecessary personal information in documents filed with the court).
 

 [12]
 

 . Under subdivision (e)(2) the membership will include: two district court judges; five circuit court judges, including one chief judge; two county court judges; three court administrators; three court technology officers; four clerks of court, including one appellate court clerk; four Florida Bar members, including one Board of Governors member; and two members of the public at large.